Council, do you need the clerk to do anything with the time? Yes, Your Honor. How much? Christopher Johnson, Mr. McNeely, Your Honor. I will go ten minutes. Ten and ten? Ten and five, and five will be reserved for later. Ten, five, five. Could you do that, Madam Clerk? Just set the clock as though it was a ten-minute argument on the first one. We're ready for you, counsel. Thank you, Your Honor. Christopher Johns for Mr. McNeely, Your Honor. The issue of this appeal, it involves the loss amount of the unauthorized access device. Counsel, I found it puzzling because the general legal terms were used without much concreteness by the probation officer, the prosecutor, and the defense. And I am still not clear on exactly what it was that these people had 778 of. There were so many different ones of them, Your Honor. They're broken down. They were credit card statements. Let's see. Credit card statement. You mean the bill you get from Visa or MasterCard. Yes, Your Honor. And that shows what your number is, and it shows what your charges have been. And they stole those from the mail. Correct, Your Honor. And then there were credit card numbers. The credit card statement. How do you steal money with that except that you know the number? Well, that's how they break it down in the pre-sentence report, Your Honor, and that's how they dealt with it at the district court. Okay. But that's one of the devices is a credit card statement. Correct, Your Honor. Under the statute, an access device, any number, a PIN number, a credit card account number, all those are used to get funds. Okay. I understand. Now, how did the credit card number differ from the credit card statement? Was it different numbers? I think there were different numbers, Your Honor. The numbers were just on a sheet of paper as opposed to on a statement. Is that the idea? I think that's correct, Your Honor. Now, let me ask you about the checks. Excuse me, Jessica. I'm confused about the checks, the 700. My next confusion, too. Your Honor, with regard to the checks, the 778 checks, I'm as confused as Your Honor is. But in going through the record, they refer to 778 checks. And when we go to the pre-sentence reports, it says completed checks. Well, wait a minute. We did all that, and I'm left as much in the dark as I was before. Surely the prosecutor and defense counsel actually looked at the things. And what I was wondering is, is this like when I get my checks from Deluxe Checks, the box of 300 checks and somebody steals the box out of the mail of 300 blank checks? Is this the four or six checks that Visa sends me every month along with my statement that I can use to write checks against my credit card? Is this some other kind of checks? I can't figure it out, but you must have looked at them. Your Honor, the record is unclear. No, the record is unclear. I have not looked at the checks. They are not a part of the record. And I can only argue as to what's in the record. And what's in the record is what's in the pre-sentence report and an addendum to a pre-sentence report. There's not a further record in district court that's not in the excerpts here? No, Your Honor. The checks were never made a part of the record. And when we go back to the pre-sentence report, the probation officer says, I was just given 11 checks. This is something where there's no contest. If you and the prosecutor both stood at his desk or your desk and looked at the things, then I doubt if he will object to your telling us what they are. Well, I'm at a disadvantage because I wasn't a trial lawyer. So I've never seen those checks, Your Honor. But I have seen the record, and I've gone through the record very carefully. And that's what I base my argument on, which is all I can base it on. But I have the same question that Your Honor had. There were 778 checks. They know that 11 checks were completed. Now, the word completed appears in the pre-sentence report. And then in the third addendum to the pre-sentence report, they say written checks. So it's unclear were those checks that somebody else issued or were these blank checks that the defendants wrote out 11. Let me ask you this. Suppose it was a brand-new box of checks as Judge Kleinfeld posits, and they only got around to writing 11 of them. If that's the circumstance, would you agree that the judge was within his discretion to say, you know, he had 770.80. He only got to 11. We can estimate what the intended loss was by applying an average on that basis. If that's the circumstance, wouldn't that be a logical thing for the judge to do? I would disagree with that for two reasons, Your Honor. I realize the prosecution cites two very good Ninth Circuit cases that deals with the issue of estimate. And in the guidelines, it does provide you can do a reasonable estimate. But I submit, Your Honor, that when you only have 11 out of 778, from a statistical standpoint, that's less than 2%. Well, the issue is what was the intended loss. And if the judge says you had 778 blank checks at your disposal, you got around to writing 11 of them. The average of those 11 was 198. We can assume that you would write on the average of $198 on each of the other blank checks. I mean, that seems to me to be pretty logical. If, on the other hand, they actually wrote 778 checks, I take your point. I think you've got a valid argument that we don't have to do an estimate. They could total up the face amount of the 778 checks and you can find out the exact loss. There's no reason to approximate it. But as to the state of the record, Your Honor, what they did was in that third addendum, what the probation officer said was, look, we're going to use this $199 figure because it is an estimate and we're going to give the defendant a break in light of 3FI in which normally it would be $500 per check, which comes to our issue. Is it $500 per check that's used or possessed? Well, let me ask you this. If you're confused about the record and we're confused about the record, what do you suggest we do about it? Then it has to be remanded, I think. For what? For exactly what findings? Precisely what would we order the district court to do? Well, the district court would have to make a more precise finding with regard to the 778 checks, which net out a loss of $155,000. But more importantly, the district court needs directions from this Court with regard to how you apply 3FI. Is it $500 per used check, one that's actually a charge that's been made to, or is it simply the possession? That seems to me an easy legal question that we don't need to remand. We either say, yes, the $500 rule applies or the $500 rule doesn't apply. There's nothing to remand about that. That's for us to decide. That's correct, Your Honor. And if you decide that. So I'm saying if we were to send it back, we'd have to ask the judge to go figure out what are these seven – tell us more about these 778 checks. Yes, Your Honor. Anything else we'd have to ask the district court to do? Well, only as it relates to what this Court determines with regard to the $500 loss rule. Obviously, if you rule in the defendant's favor on that, that it's per used check or per used account number, then that's an error and that has to be corrected. I'm inclined not to correct errors until I know what the facts are. I mean, I hate making legal judgments in the air because they're so likely to be wrong or irrelevant. Your Honor, if I could submit that if this Court makes the ruling on the $500 loss rule, I think that will resolve this case with regard to the application, because not only was there – We might say we don't care what the 778 checks are. Multiply it by $500 and that's your amount of loss. Well – But why would we do that if we don't have to, not knowing what the 778 checks are? Well, that was only with regard to the second argument, Your Honor, with regard to the $155,000 based on those 778 checks. That's only one component with regard to the loss here. We have another component over here, which were the credit card numbers, the account numbers, the other convenience checks and so forth, where the Court just took $500 times that amount and came out with $119,000. So there's really two components here to the loss where the Court came up with $119,000. If it turns out that there are 778 checks, all but a few of which are blank, and that these checks are various things, some are the four or six checks that you get with your visa statement every month in case you want to write a check against your visa account, and some are like the boxes of blank checks that you get when you run out of checks and send the form to your bank and they send you another box of blank checks, why under yellow wouldn't we just say multiply 778 by $500? That's the right answer. These fellows got less time than that would give them. So it's affirmed. Why wouldn't that be the end of it? Because when we followed the yellow case, Your Honor, that decision was predicated on actually using 7,000 instruments that they had there, the 7,000 numbers. If we go back and carefully look at the opinion, because really they had 8,450, but they found that about, I guess, 1,450 didn't work. And this was a case in which they were actually in process of endeavoring to use those numbers, and the only reason that they didn't was because the Secret Service was there and they set up bogus terminals. So he was actually in process. In fact, when he was arrested, he had just given another list of 6,661 numbers to the Secret Service. And that case was predicated on the case agent determining that of all these numbers that we're giving us, 8,450, 90 percent of them are good. And they were in process there of actually using those numbers, or at least the defendant thought he was using them. Let me ask you a question. Suppose we were to rule that the judge can use the $500 flat rate figure to determine an intended loss, okay? But we also rule in your favor that we just can't figure out what's going on with these checks, so we take out of this $155,000 that the judge attributed to this average business. What would that do to the sentence? If we took out from the loss figure $155,000, would that make any difference in the sentence? Well, the difference it would make would be in the calculation of the sentencing guidelines. Right. I understand that. My question is, would it change the guidelines? Yes, it would, Your Honor. How would it do? To knock $155,000 off the loss. It would bring it down to the intended loss. It would bring the intended loss. It would do 10 points instead of 12, Your Honor. It would reduce it by 2 points. And then consequently, then, with the acceptance of responsibility and so forth, we would then get down to a base level of 17 as opposed to what he was predicated to. His sentence was 19. Okay. And then if the Court were to do that, that would be material, and then Cantrell would require that it be remanded. Okay. I think you're going into your compatriot's time there. I'll go ahead and save the rest of my time here. Thanks. Good morning, Your Honors. My name is Karen Bucher, and I represent the appellant, Sharone Edwards. And our issues are identical, and I don't have anything to add unless the Court has something to say. Do you know any more about what these checks are? Well, I was confused as well, because Did you ever look at them? When I first read them, I got a box from the trial counsel, and inside there's a bunch of things. There's checks, there's statements, and I don't know what those are. You're both appellate lawyers. I was thinking when I was a criminal defense lawyer, I'd go over to the DA's office and he'd show me this stuff. We wouldn't have any disagreement as a practical matter about what we looked at, but that's not the situation here. Well, that's not what happened. In the pre-sentence report, the pretrial services officer said, I received 11 checks, and as we know, they did the math. And the district court made this finding. I know what all that says. I was trying to find out if there's any more, since I'm confused. I'm confused as well. I don't know if there's more. I have seen other things, checks and whatnot, that I have no idea what they are, because they weren't referenced in the record. The record does not describe anything to help us here. Thank you. Good morning, Your Honors. And may it please the Court. Bi-Yong Su Kim for the United States. You gave us kind of a sparse record. We're supposed to just take your word for it, that these are access devices within the meaning of the statute, and I don't even know what we're talking about. I was trial counsel or counsel in the district court, Your Honor, during the sentencing proceedings. I didn't handle the actual sentencing hearing, but this was my case. I don't know what we're talking about. Yes. You know my questions. I do, Your Honor. And I'm sensitive to not going outside the appellate record, but I think that the appellate record, as announced, as we decide it's necessary to, I suppose we can remand, as Judge Silverman hinted. Yes, Your Honor. Again, I'm sensitive to not at this point in time going outside the record, because I am the only one. I have seen the checks, and I know what they state. But I think that the appellate record, Your Honor, as it now stands, certainly suggests strongly that the 778 checks that I referred to are checks that were filled out, not necessarily by the defendants. Well, tell me where. Well, if that's the case, then I don't understand why the judge did an estimate. That's the problem I've had with it. You know, the judge can do an estimate when the actual figure is not susceptible to calculation. If there are 778 completed checks, it doesn't take, you know, all you need is an adding machine to add up 778 checks. That's not a mind-boggling figure. Yes, Your Honor. I guess there are two responses to that. The first response is that although it would certainly have been possible, I think, to average the ---- And easy. Every one of us does it around April 15th. Although it certainly could have been done, the district court in this case decided because the checks, the number of the checks and the amounts of the checks were never in dispute at the sentencing, the defendants never asked, well, let me ---- I think they were actually given all of the checks, all of the 778 checks. But they never said, well, this is the average amount. We want you to do this calculation. Rather, what the probation office did, Your Honor, is to take the 11 checks that were given. Can you give us any good reason why we shouldn't just remand the case, tell the district court, tell us what it is that we're talking about here, give us Xeroxes of it? I can, Your Honor. Give us the exemplars and the records so we can actually see what we're talking about, and if the checks are filled out, add them up and then come back? I can certainly take a shot at giving you a good reason not to do that, Your Honor. Why shouldn't we do that? The reason you shouldn't do that is because that issue is not raised on appeal. The issue on appeal is whether, assuming as everyone did in the district court, and I thought on this appeal that these 778 checks did constitute access devices, then do you assign the $500 minimum loss rule or do you accept what the district court did which was to the defendant's, which redounded to the defendant's benefit in this case? It's the government's position that the $500 minimum loss rule applies because it's undisputed, I thought, in the district court and on this appeal that these are access devices. And therefore ---- I don't think checks are access devices. I think credit card numbers are access devices. I think credit cards are access devices. But I don't think checks are access devices. Well, again, Judge Silverman, that issue is not presented on this appeal as I read the appellate briefs. Okay. So now we don't apply the $500 rule to the checks. We have to figure out what the attendant loss or the checks were. If you assume, Your Honor, that these are not access devices, then the issue, I suppose, is was the judge correct or did he abuse his discretion or ---- He's got a box of blank checks, it seems to me. He was probably within his discretion to try to figure out how much was an intended loss, how much damage could you do with a box of 778 checks. If they're blank checks, if you're telling us that you're kind of hinting that they were really completed checks and there were 778 written out checks, there's no reason to do an estimate and you should have totaled them up and that was the intended loss. That's sort of the way I see it. Well, again, that's not the issue, as I believe has been framed on ---- I also don't even know if they're filled out checks. Now you just get Xeroxes of your checks from the bank in most cases. But until recently, most banks would send you your checks that you had written and they've been cashed and the money has been taken out of your account and sent to the drawee or endorsee and then they send you back your original check. And for all I know, that's what these 778 checks are. I just don't know what they are. With that kind of check, you can't steal any money. You have the account number, but it's the identical number on all 778 of them. Assuming that these are checks that are being returned from the bank as opposed to the checks that an individual might write to pay his utility bills, and I think it's the latter, but, again, I don't believe that the record before this Court is clear on that. But assuming that these are the former kind of checks that are being returned from the bank, I would submit that these checks do contain numbers, bank account numbers on the bottom that ---- Number, not numbers. One number. Your account is number 023182330 on every one of the checks or whatever your number is. The 778 checks are individual checks that are filled out. The 30 convenience checks are checks that are not filled out. And that's why there is a dispute in the district court and that's raised on this appeal. This is an issue that is raised as to whether those should all be counted as one access device number or multiple access device numbers. And the district judge in this case assigned them all ---- assigned the $500 minimum loss rule to all of them. I understand that access number statute. What they're looking at, what Congress is looking at is how many victims can you steal from. If you have a whole bunch of stolen credit cards, then you can steal from a whole bunch of different people. If you have 50 checks all with the same account number, then maybe if you have a pretty face, you can go into a bank and write a countercheck and fill in that number. And if it's not too big, they'll cash it for you. But you just have the one number. That's right. For purposes of determining whether there's an access device number. What to apply the $500 to. And, Your Honor, it's important to keep in mind that even had the district court in this case assigned those 30 convenience checks, counted those as just one single access device to which only $500 would be attributed, then it would have made no difference to the sentence because they would ---- the defendants would still have been over $70,000 over the next level in the sentencing guidelines. But again, Your Honor, with respect to ---- But I didn't follow that. Yes, Your Honor. Even if the district court erred in assigning the $500 minimum loss rule to each of these blank 30 convenience checks, and it is unclear from the record whether these were just a packet of checks or whether these were individual blank convenience checks or whether they were packets of four or seven or whatever convenience checks usually come in, even assuming that the district court erred, my point is simply that it would have made no difference to the sentencing guideline level, putting aside, of course, the 770A checks that we've been discussing. And again, those were written checks. But again, Your Honor, there was no ---- You mean they were written? What do you mean they were written checks? Your Honor, those were ---- This is where you're saying you don't believe. I think the record fairly supports and ---- Why do you say the record supports that? Where in the record is that found? Your Honor, in the third addendum to the presentence report, the Probation Office refers to the 11 of the 770A checks as being written checks. As completed checks. As being completed checks, Your Honor. Doesn't that suggest there were uncompleted checks? No, Your Honor. I think the implication is actually that the Probation Office wasn't given by the case agent in this case all of the validity of the checks. Even if that's true, why shouldn't they require the turnover of all the checks? Because, Your Honor, in the district court, the defense never disputed that there were 770A checks that could constitute separate access devices. And the only issue that I thought was raised on this appeal was simply whether the $500 minimum was ---- I don't know why you keep saying that. That's just not correct. My note to myself here as I'm taking notes on what they're arguing is that the district judge erred in attributing $199.48 of an average value to 770A checks. That is on appeal. That is an issue before us. Your Honor, there are several issues that are on appeal, and I apologize if I have mischaracterized what I understood to be the pawn's position. One thing they're arguing is that the $500 flat rate rule shouldn't apply. Another thing they're arguing is the judge shouldn't have applied a $199 average to the 11 checks, deduced from the 11 checks to the 770A checks. That's another thing they've argued. Right. You know, I appreciate your clarifying that. I think that that is an issue on appeal. But I think that the cases and the stencing guidelines themselves make abundantly clear that reasonable estimates of loss, there are numerous. Even when actual loss can be determined with easy mathematical calculation? Your Honor, I do believe that the facts in the cases in which this Court has discussed the different loss calculation methodologies are cases in which more or different methodologies could have been used. We get a lot of stuff about complicated losses where it's really hard to say. And those are the cases where we say, go ahead and estimate. It's fine as long as it's reasonable. They must have adding machines in Riverside. I realize it's not Los Angeles, but we even have them in Fairbanks, Alaska. They even have tapes. We have spreadsheets. It's not that hard. I don't understand why everybody's dancing around. It's not like some snitch in a big international narcotics case. We have no idea what we're talking about. We haven't seen the things. Nobody gives us pictures. I look at what the probation officer says, and it's all so summary that I really can't penetrate it to know exactly what we're talking about. I see no excuse for not adding up the checks if they're filled out. It's a cinch. All of us do it every April 15th, adding up our charitable contributions, adding up our business-related expenses of employees, all these things. It's routine. Why are we dancing around on what the facts are, and why should we allow the district court to dance around on what the facts are and estimate when the facts are readily ascertainable? Your Honor, I don't know if this is a satisfactory answer that I'm going to give, but I can give you a little bit of history of what happened in the district court. Initially, and this is true. Nobody goes over and looks at the box, as far as I can tell. Well, the government had the box. The government looked at the box, and the box was provided to the defense. I thought you said that maybe the case agent didn't even give it to the pre-sentence report writer. That, I think, is correct. So the pre-sentence report writer is left making things up because the case agent didn't want to walk across the street with the box. I think there are multiple boxes. Big deal. Your point is well taken, Your Honor. I just want to explain a little bit about the history so that Your Honor can at least try to understand why this issue might have come up to this Court in the posture it is in. And that history is simply that in the initial pre-sentence report, Your Honor, the probation office assigned $500 to each of the 778 checks. That made a material difference. It kicked up the defendant to the next loss amount level. And it led to an increase of 14 as opposed to 12. That's the right thing to do if they're independent access devices, but we don't know if they are because we don't know exactly what they mean by the checks. So what happened next, Your Honor, is that after they were sentencing a memoranda filed by the defense, the probation office came back and revised its initial calculations and said even though we believe that the $500 loss amount applies, we're going to, in order to avoid any kind of disproportionate effect on the defendant's sentences, basically give the defendants a break. And what they then did was they assigned, they took the average of the checks. So all this, giving the defendants a break and having us expand the degree of estimating allowed by the district court and being very vague about access devices, it's also that some maybe even cross the street with a couple of banker's boxes? Your Honor, I don't know if I have a good response to that except to say that, again, in the district court, the defense had all of the documents that they would have needed in order to connect their own accounting of the checks. And this issue, all I'm trying to say, Your Honor, is that I don't think that this issue was presented directly to the district court because I think the perception was that the probation office had already given the defendants a break by not assigning the $500 loss amount. That's another fallacy in your argument, it seems to me. An access, a check is not an access device. A check is not an access device by definition under 181029E1. It specifically excludes, you know, something that affects a transfer originated solely by paper instrument. A check is not an access device. Your Honor, I believe that is the probation office's position as the government's. And, again, I don't care what their position is. I'm telling you, the statute excludes a check as an access device. I understand that, Your Honor. All I'm trying to get to is just the number on the bottom, the account number, the bank account number, that in conjunction with a PIN number. So you're saying a check is not an access, you agree with me, a check is not an access device, but the writing on the check is an access device? Well, if there's an account number on the bottom of the check, I believe it was the probation office's position that it could. Well, I don't care what their position is. I mean, if the statute says an access device includes a card, plate, account number, serial number, et cetera, dot, dot, dot, other than a transfer originated solely by paper or an instrument, doesn't that exclude checks as an access device? I think it does exclude checks, Your Honor, if there's no other. Are there any checks that don't have account numbers on them? I don't. Have you ever seen one? I haven't. I have not, Your Honor. Well, we do, after all, want to save the agents the trouble of having to get up from their desk, walk across the street with those boxes. Your Honor, I understand your criticism, Your Honor. And I think that in retrospect, all of those materials that were given to the defense counsel prior to the sentencing should also have been given to the probation office. And I think that if you look at the history of what happened in terms of the probation office's initial recommendation. For all I know, the probation officer cut the defendants a break, figured now they'll never complain. Nobody has to get up from their desk and walk across the street with the boxes. Maybe the sentence should have been a lot harsher. That could be what happens. This fellow, the male, I can't remember his name, looks like he's some really nasty gangbanger, and this is one of his less serious crimes. It could be, Your Honor, that if the case goes back down and there is an evidentiary hearing and these checks are examined by the court and it's determined that it could very easily be the case that the checks will result in a much higher loss amount. That's correct, Your Honor.  Thank you, Your Honor. I just have one point, Your Honors. And this goes to the $500 minimum loss rule that we'd ask the Court decide that even if the Court decides to remand this so that the district court will be able to properly apply that, because this is what the district judge said with regard to the $500 minimum loss rule. And this is at our excerpt of record 0142 where an objection was being made to applying the $500 minimum loss rule to these so-called access devices when there was no evidence they had been used. And this is what the Court said at lines 12 to 18. Well, I'll say this just for the record. I understand what you're saying, but I've used the $500 per account number or bank statement as a reasonable estimate of the intended loss. I'm using that application note as guidance to the Court arriving at recognizing that in many of these unauthorized devices in this case, there's no evidence that they were used to make unauthorized charges, which brings us to the issue of the $119,000 that the Court's acknowledged that in many end, as does the probation report. Many of these things were not used. So if we're correct on the $500 minimum loss rule that it contemplates that it actually be used, a charge be made, then you can't apply the $500 rule. And going back to the, our sealed excerpt of record at page 12, we go through the different paragraphs that the probation officer was referring to, in paragraphs 55, 56, 57, they refer to the credit card statements, additional credit card account numbers, bank statements, convenience checks, and they apply $500 to each one of these, notwithstanding the fact that none of them, there was actually a charge made. And that's the problem, one of the problems in the case, along with the other problem that the Court has noted. And unless the Court has any further questions, I would submit, I do appeal. Roberts. No, thank you, counsel.
judges: Lay, Kleinfeld, Silverman